UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BARRY AUSTIN BROWN, )
) NO. CV-06-2815-LRS
)
Petitioner, ) **ORDER DENYING**
) **§2254 PETITION**
v. )
)
)
THOMAS L. CAREY,[1] )
)
Respondent. )
_____ )

**BEFORE THE COURT** is the Petitioner's Petition for Habeas Corpus Relief pursuant to 28 U.S.C. Section 2254 (Ct. Rec. 1).

**I. BACKGROUND**

Petitioner Brown is in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his November 1, 1974 conviction in the Santa Cruz County Superior Court of first degree murder and his October 22, 1974 convictions in the San Mateo County Superior Court for two counts of first degree murder for which he was sentenced to seven years to life. (Ct. Rec. 8, at 1.) Petitioner does not challenge the propriety of his convictions; instead his Petition challenges the Board's 2005 decision finding him unsuitable for parole. Petitioner does not contest that he received notice of his 2005 parole hearing, had an opportunity to appear at the hearing, and received a copy of the

---

[1]Although the petition specifies Tom Carey as the warden of California State Prison - Solano, the proper respondent is K. Sisto, the current warden.

**ORDER DENYING**
**§2254 PETITION -** 1

Board's decision finding him unsuitable for parole.

## II. DISCUSSION

### A. Federal Habeas Standards

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d).

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The term "unreasonable application" has a meaning independent from that of the term "contrary to." A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making an "'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. This is a "'highly deferential standard for evaluating state court rulings'" and "'demands that state court decisions be given the benefit of the doubt.'" *Clark v.*

**ORDER DENYING**
**§2254 PETITION -** 2

*Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003)(citations omitted).

In determining whether a state court decision is "contrary to" or an "unreasonable application" of federal law under §2254(d)(1), the federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). In the captioned matter, the last reasoned state court decision is that rendered by the Santa Cruz County Superior Court, on May 30, 2006. The California Court of Appeal summarily denied Petitioner's petition for review on August 14, 2006. On October 25, 2006, the California Supreme Court subsequently and summarily denied Petitioner's petition for review.

Under Section 2254(d)(2), a federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. Section 2254(e)(1).

**B. "Some Evidence"**

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006). The U.S. Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not

**ORDER DENYING**
**§2254 PETITION -**         3

supported by "'some evidence in the record,' or is 'otherwise arbitrary.'" *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007)(quoting *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985)).[2] "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id*. at 1129 (quoting *Hill*, 472 U.S. at 457).

The Board of Parole Hearings ("BPH") must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). The overriding concern in determining parole suitability is public safety and the focus is on the inmate's current dangerousness. *In re Dannenberg*, 34 Cal.4th 1061, 1086, 23 Cal.Rptr.3d 417, 104 P.3d 783, *cert. denied*, 546 U.S. 844, 126 S.Ct. 92 (2005).

Circumstances tending to show unsuitability and tending to show suitability are set forth in Cal. Code. Regs., tit. 15 § 2402(c) and (d). Circumstances tending to show that a prisoner is unsuitable for release include the following: (1) the commitment offense, where the offense was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a

---

[2] Petition for rehearing and rehearing *en banc* denied at 506 F.3d 951 (9th Cir. 2007).

**ORDER DENYING**
**§2254 PETITION -**          4

history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6)"serious misconduct in prison or jail." Circumstances tending to show suitability for release include: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed the crime as the result of significant stress in his life; (5) the prisoner lacks any significant history of violent crime; (6) the prisoner's present age reduces the probability of recidivism; (7) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (8) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

Petitioner alleges eight grounds for relief in his federal habeas petition: (1) applying the Board's parole consideration criteria implemented after he committed his commitment offenses to determine his suitability is an ex post facto violation; (2) using the parole consideration criteria developed after he committed his commitment offenses to determine his suitability violated the terms of his plea agreement; (3) the Governor's anti-parole policy violates his due process right to an unbiased consideration; (4) the Board's policy to deny parole to prisoners who refuse to admit guilt violates state law; (5) the Board's decision violates his due process rights because it is not supported by some evidence; (6) the Board's conclusion that he is unsuitable for parole based on the unchanging circumstances of his commitment offense violates due process; (7) the some evidence standard should not be applied to review the Board's decision finding his unsuitable for parole; and (8) deferring his next subsequent parole consideration hearing for five years violates state law and is not supported by some evidence. (Ct. Rec. 1).

**ORDER DENYING**
**§2254 PETITION -** 5

1  The Board found that Petitioner, a multiple murderer who killed three people
2  over the course of several weeks, unsuitable for parole based primarily on his
3  commitment offense.  This Court finds the Board's decision did not violate
4  Petitioner's limited due process rights because he was given an opportunity to be
5  heard regarding the parole consideration decision and a written copy of the Board's
6  decision.  Likewise, the Board's decision did not violate his federal due process
7  rights.  This Court, therefore, will focus on the crux of the Board's denial of
8  parole:  Petitioner's claim that BPH's conclusion that he is unsuitable for parole
9  based on the unchanging circumstances of his commitment offense violates due
10 process.  Petitioner's remaining contentions are found to be without merit based on
11 BPH's decision.
12 In *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003), the Ninth Circuit
13 Court of Appeals cautioned that "a continued reliance in the future on an
14 unchanging factor, the circumstance of the offense and conduct prior to
15 imprisonment, runs contrary to the rehabilitative goals espoused by the prison
16 system and **could** result in a due process violation." (Emphasis added).  In *Sass*,
17 however, the court criticized this statement from *Biggs* as improper: "Under
18 AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] it is not our
19 function to speculate about how future parole hearings could proceed."  461 F.3d at
20 1129.  In *Sass*, the court concluded that the parole board is not precluded from
21 relying on unchanging factors such as the circumstances of the commitment
22 offense or the petitioner's pre-offense behavior in determining parole suitability.
23 *Id*.  In *Irons*, the court sought to harmonize its decisions in *Biggs* and *Sass*.  *Irons*
24 determined that due process was not violated by the use of the commitment offense
25 and pre-offense criminality to deny parole for a prisoner sixteen years into his
26 seventeen years-to-life sentence.  *Irons* noted that in all three cases (*Irons*, *Biggs*,
27 and *Sass*) in which the court had held that a parole board's decision to deem a
28 prisoner unsuitable for parole solely on the basis of his commitment offense

**ORDER DENYING**
**§2254 PETITION -**          6

comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. 505 F.3d at 853-54. *Irons*, however, cannot be read to hold that reliance on a commitment offense and pre-offense behavior must cease once the prisoner reaches the minimum number of years in his sentence.

In sum, BPH may look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that a prisoner is not currently suitable for parole even after the initial denial of parole. There is no hard and fast rule as to when a denial of parole based solely upon the commitment offense or pre-offense behavior violates due process. The weight accorded to these events, however, should decrease over time as a predictor of future dangerousness, provided the prisoner demonstrates favorable behavior over that same period of time. As such, reliance on only the facts of a crime may eventually result in an arbitrary decision.[3]

A prisoner's commitment offense, by itself, may justify parole denial if the BPH can "'point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons*, 505 F.3d at 852, quoting *Dannenberg*, 34 Cal.4th at 1071. Factors which may be considered in determining if an offense was committed "in an especially heinous, atrocious or cruel manner" include that "[t]he offense was carried out in a dispassionate and

---

[3] In *Hayward v. Marshall*, 512 F.3d 536, 546-47 (9th Cir. 2008), a panel of the Ninth Circuit determined that in the particular circumstances of that case, the petitioner's commitment offense did not constitute "some evidence" supporting the Governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. The Ninth Circuit has, however, decided to rehear the case *en banc*, 527 F.3d 797 (9th Cir. 2008), and so the panel decision cannot be cited as precedent.

**ORDER DENYING**
**§2254 PETITION -** 7

calculated manner, such as an execution style murder," "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs., tit. 15 §2402(c)(1)(B), (D) and (E).

As the California Court of Appeal noted in its decision, BPH found that Petitioner murdered three people in three separate incidents. (Ex. 2 at 31-37, 118-125.) Pipes was killed as part of the robbery of the store where Pipes worked. (Ex. 2 at 31-37, 118-125.) There was no reason offered why Brown killed McNamarra, an acquaintance, or Russell, other than both victims's property was confiscated by Brown and his co-defendant. (Ex. 2 at 31-37, 118-125.) As the Board observed, "we [the Board] can only imagine what would have happened in September or October if you and your crime partner had not been apprehended." (Ex. 2 at 118.) In addition, Brown's convictions arose from two separate proceedings for the murders, first in Santa Cruz County for one count of first degree murder, and then, in San Mateo for two counts of first degree murder. (Ex. 1.) Under these facts, if Brown had been convicted under current law, he would face death or life in prison without the possibility of parole. Cal. Penal Code § 190.2 (a)(2)[separate multiple murders], (3)[multiple murders during same proceedings], (17)(A)[murder connected with robbery]. The superior court found that Petitioner's commitment offense showed viciousness far greater than the minimum necessary to sustain a first degree murder conviction.

Under these circumstances, Petitioner's commitment offense, by itself, was sufficient to deny him parole. In this regard, even if we ignore the fact that only Brown was convicted of all three murders, and instead assume his co-defendant was the actual murderer,[4] Brown would still have been eligible for the death

---

[4]At the hearing, the District Attorney noted that Petitioner had changed his

**ORDER DENYING**
**§2254 PETITION -**          **8**

penalty or life without parole because Pipe's murder was followed by the robbery of Pipes's store. Cal. Penal Code § 190.2 (a)(17)(A).

Furthermore, BPH also considered Petitioner's post-imprisonment conduct from a period between 1977 to 1993, which included discipline mostly for controlled substances . (Court of Appeal decision, Ex. 1 to Ct. Rec. 8 at p. 73). BPH noted that Petitioner needs therapy in order to face, discuss, understand, and cope with stress in a nondestructive manner. (Ex. 1 to Ct. Rec. 8, at p. 126). Petitioner was duly and appropriately commended by the BPH for being infraction-free since 1993, a period of almost twelve years. BPH also gave the Petitioner credit for having "realistic" parole plans. (Ex. 1 to Ct. Rec. 8 at p. 126-27). That said, there was still "some evidence" justifying BPH's decision to deny parole based on Petitioner being a danger to society if released. Accordingly, Petitioner's due process rights were not violated by the denial of parole at his October 19, 2005 hearing.

## III. CONCLUSION

The California Court of Appeal's adjudication of Petitioner's constitutional claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent. It also did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner's 28 U.S.C. §2254 petition (Ct. Rec. 1) is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and forward a copy to the Petitioner and to counsel for the Respondent.

///

---

story after 20 years, trying to shift the blame to someone as being the actual perpetrator of the commitment offense. Ct. Rec. 8, Ex. 1, at p. 103.

**ORDER DENYING**
**§2254 PETITION -**          **9**

Judgment shall be entered accordingly.

     **DATED** this   5th   day of May, 2009.

                             *s/Lonny R. Suko*

                             LONNY R. SUKO
                         United States District Judge